USCA1 Opinion

 

 October 22, 1993 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-2445 SAUL BAEZ-HERNANDEZ, Plaintiff, Appellant, v. SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Hector M. Laffitte, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Selya and Stahl, Circuit Judges. ______________ ____________________ Raymond Rivera Esteves and Juan A. Hernandez Rivera on brief for ______________________ _________________________ appellant. Daniel F. Lopez Romo, United States Attorney, Jose Vazquez _______________________ _____________ Garcia, Assistant United States Attorney, and Robert M. Peckrill, ______ ____________________ Assistant Regional Counsel, Department of Health and Human Services, on brief for appellee. ____________________ ____________________ Per Curiam. Claimant Saul Baez Hernandez appeals __________ from the district court judgment affirming the decision of the Secretary of Health and Human Services that claimant is not entitled to Social Security disability benefits. I. PROCEEDINGS BELOW _ _________________ Claimant filed an application for Social Security disability benefits on March 10, 1986. He alleged an onset date of January 25, 1985 when he hurt his back at work; he listed as his impairments back and nervous conditions. Claimant returned to work on November 16, 1988. His application was denied by an administrative law judge (ALJ) in July 1987 and the Appeals Council rejected claimant's request for review. While the case was pending in the federal district court, the Secretary of Health and Human Services requested a remand. Pursuant to this remand, the Appeals Council ordered that a second hearing be held with the testimony of a vocational expert (VE). At the hearing, held on November 16, 1988, it appears that no such expert testified. A different ALJ determined that claimant was not disabled. The Appeals Council, on March 20, 1989, ordered yet another hearing; it determined that claimant's limitations significantly affected his ability to perform the full range of light and sedentary work. It ordered that a VE -2- testify as to the existence of jobs that claimant could perform. On June 22, 1989, after holding the third hearing, at which a VE testified, the ALJ who first had considered claimant's application determined that claimant was not disabled. He found that claimant suffered from severe lumbosacral strain. As for claimant's complaints of totally disabling pain, the ALJ concluded that while credible when he first injured his back, there was no convincing evidence of continuing severe pain. Thus, the ALJ credited the allegations of pain to the extent that claimant was prohibited from engaging in heavy work. He therefore could not perform his past work as a truck driver and delivery man which involved the carrying of heavy appliances. However, according to the ALJ, claimant retained the capacity for the full range of light work limited only by his need to alternate positions; claimant further was limited because he could bend only occasionally and could not use repetitive foot movements. The ALJ found that claimant did not have any nonexertional impairments. Given his acquired work skills such as following instructions and counting, claimant was able to perform semi-skilled work activities such as a stock person in a warehouse -- the job to which claimant had returned in November 1988. -3- The Appeals Council, upon claimant's request for review, affirmed the decision of the ALJ that claimant was not entitled to disability benefits. The Council did modify the ALJ's decision in one respect by finding the presence of a nonexertional impairment. However, this impairment did not significantly limit claimant's ability to do work-related activity. On appeal to the district court, a magistrate- judge recommended that the matter be remanded for further administrative proceedings. Nonetheless, the district court judge affirmed the Secretary's decision. This appeal ensued. II. DISCUSSION OF THE MEDICAL EVIDENCE __ __________________________________ A. Back Impairment _______________ The evidence concerning the nature and extent of claimant's back impairment is conflicting. In total, six consultative evaluations were conducted between 1985 and 1988. In addition, claimant received treatment at the State Insurance Fund (SIF) from January 1985 through April 1988. See Exhibits 17 and 36. According to SIF records, a C-T Scan ___ performed in August 1985 revealed a narrowing of the disc space at L5-S1 with a disc herniation to the right and a small lateral disc herniation to the left at L4-L5. In August 1985, a physiatrist at the SIF examined claimant and found that claimant could not squat, had pain upon palpation and upon flexion and lateral movement of the trunk. During 1985, claimant continued with these symptoms. However, an -4- SIF physician in September of 1985 noted that claimant's pain appeared only upon exercise or prolonged periods of sitting or standing. At this examination, he found no radiculopathy and that claimant's gait was normal. In March 1986, a follow-up report indicated that claimant evinced little interest in engaging in vocational rehabilitation. In June 1986, a vocational evaluator reported that despite claimant's complaints of testicular pain, headaches and pain in his fingers, neck, low back and legs, claimant was able to lift up to twenty pounds. Although he had trouble bending forward and experienced difficulties kneeling and squatting, he could sit and stand for sufficient lengths of time so that with a job that allowed him to change position, he could perform light work. Thus, claimant was noted as having "great" rehabilitative potential. Turning to the consultative medical evaluations, we find it necessary for the disposition of this appeal to review only those upon which the VE based his opinions as to appellant's physical abilities. In August 1988, an internist found no swelling, no muscle atrophy and normal reflexes. See Exhibit 41. There was diminished pinprick sensation in ___ claimant's left leg. The diagnosis was fibromyositis of the lumbosacral spine with spasms and discogenic disease at L5- S1. The residual functional capacity (RFC) form indicated -5- that claimant could lift a maximum of 50 pounds on occasion, could stand or walk for four to six hours at a time and could sit for up to four hours so long as he could alternate positions. Claimant could frequently climb and balance and could occasionally stoop, kneel, crawl and crouch. A neurologist, also examining claimant in August 1988, found claimant with a normal spine, full strength, normal tone and no evidence of atrophy or radiculopathy. See ___ Exhibit 42. Claimant had limited trunk movements and although he showed signs of sensory deficit, they did not follow any anatomical distribution. An X-ray revealed a narrowing of the L5-S1 disc space and lumbar spasm. The diagnosis was chronic back pain. In the RFC evaluation, the neurologist determined that claimant could lift a maximum of 50 pounds. He could stand and walk without any limits, but could sit for an uninterrupted time for only three to four hours in a work day. Claimant had no limits in kneeling, crouching, crawling, climbing or balancing. He was limited in his ability to push or pull. In contrast to the above is the report of an evaluation performed by a neurologist on January 28, 1987. See Exhibit 20. This examiner found lumbar dextroscoliosis, ___ marked lumbosacral paravertebral muscle spasm and tenderness to palpation. Claimant had limited range of motion and could bend forward only 30 degrees. The diagnoses were as follows: -6- (1) herniated nucleus pulposus (HNP) at L4-L5 and L5-S1; (2) bilateral intractable S1 radiculopathies; (3) severe, chronic lumbosacral myositis and myofascial pain; and (4) lumbar facet axial injury and pain syndrome. The report's conclusions were that claimant's musculoskeletal and spinal conditions, along with nerve root involvement, contributed to "severe functional spinal limitation in all of the range of lumbar movements." As a result, claimant's ability to maintain a fixed position for a substantial period of time was limited; further, claimant's constant pain was exacerbated by physical exertion. Thus, he was precluded from engaging in "any type of gainful activity whatsoever." According to this doctor, claimant was in "dire need" of treatment. At the last hearing, the ALJ asked the VE his opinion of what type of work claimant could perform. The VE responded that if one used only Exhibit 20, claimant would not be able to engage in any substantial gainful activity due to his functional limits and severe pain. However, based on the RFC forms completed by the other two examiners, claimant, although precluded from heavy work such as his last job, could perform moderate work. The VE reached this conclusion even taking into account claimant's pain and decreased abilities in sitting, standing or walking for long periods of time. -7- Claimant argues that the ALJ did not credit his complaints of pain. We do not agree. The VE in describing claimant as being able to engage in moderate work specifically referred to pain as a component of claimant's profile. The ALJ went further than the VE, deciding that claimant could perform only light work where he could alternate positions.1 This finding was based in part on the fact that claimant's pain as well as his other conditions required this kind of flexibility. Although the reports were conflicting as to whether claimant's pain was totally disabling, such conflicts are for the ALJ, not the courts, to resolve. See Rodriguez v. Secretary of Health and Human ___ _________ _______________________________ Services, 647 F.2d 218, 222 (1st Cir. 1981). Thus, we find ________ that there was substantial evidence to support the ALJ's conclusion that claimant could perform the demands of light work. 2. Mental Impairment _________________ Whether claimant's emotional impairment is disabling is a closer question. He began experiencing emotional problems after he injured his back. He received treatment for these problems at the Carolina Mental Health Center from March 1986 through February 1988. See Exhibits ___ ____________________ 1. For some reason, claimant argues that the ALJ erred by relying on the grid and that the testimony of a VE was required. It appears that claimant bases this contention on the first decision rendered by the ALJ in July 1987, rather _____ than the most recent decision of June 1989. -8- 18 and 37. At his initial evaluation, claimant stated that he had trouble sleeping, was irritable, lost his temper with his children, experienced headaches and some visual hallucinations at night. The diagnosis, at this time, was an adjustment disorder with depression; the prognosis was good with out-patient counseling recommended. Clinic notes indicate that during 1986, claimant evinced little cooperation with treatment; he stated that he was there only for the purpose of obtaining medication to help him sleep. His case was terminated in January 1987, no real changes having occurred. However, in December 1987, claimant was re- admitted to the out-patient program with the same complaints. At this time, claimant was cooperative, goal-directed, relevant and his thought processes were intact. Again, little gain appears to have been made with treatment and the record reflects that his last visit was in February 1988. Claimant underwent four psychiatric evaluations -- two in 1986 and two in 1987. All the examiners agreed that claimant was coherent, logical, relevant and oriented. See ___ Exhibits 15, 17, 38 and 40. Despite his subjective complaints of hallucinations, all four examiners also agreed that his thought processes were intact with no evidence of psychotic perceptions. Although two examiners noted some impairment with recent and immediate memory, see Exhibits 17 ___ and 40, this was not perceived as a major problem and all -9- four agreed that claimant's judgment was, at a minimum, adequate. Similarly, all four examiners agreed that claimant was anxious and distracted, with three observing that claimant appeared depressed. See Exhibits 15, 38 and 40. ___ The most common diagnosis was depression related to claimant's accident. The evaluators differed as to the effect of claimant's mental condition or his ability to function at work. A psychologist who tested claimant for the SIF, see ___ Exhibit 17, determined that claimant had a borderline IQ of 76. His vocational test scores revealed a strong interest in manual activities. Despite the presence of "mild to moderate" anxiety which affected claimant's concentration, the psychologist believed that this condition was treatable on an out-patient counseling basis. Claimant's work prognosis was "very much acceptable" and "his emotional state and his intellectual capacities" were "appropriate" for vocational rehabilitation. However, the one examiner who completed a mental RFC assessment, see Exhibit 40, rated claimant's abilities to ___ function in the following areas as "poor or none" (defined on the RFC form as "[n]o useful ability to function"): (1) following work rules; (2) relating to co-workers; (3) dealing with the public; (4) interacting with supervisors; (5) coping with work stresses; (6) maintaining concentration; (7) -10- handling detailed or complex job instructions; (8) behaving in an emotionally stable manner; and (9) demonstrating reliability. His abilities to use judgment, function independently and relate predictably in social situations were "fair" -- defined as "seriously limited, but not precluded." Claimant had good ("limited but satisfactory") abilities in the areas of understanding, remembering and carryingout simpleinstructions andinmaintaining personalappearance. Two non-examining doctors completed RFC assessments in 1986. See Exhibit 14. They agreed that claimant had no ___ __ significant limits in the following activities: (1) remembering locations and work procedures; (2) understanding, remembering and carrying out very short and simple instructions; (3) making simple work-related decisions; (4) asking simple questions; (5) requesting assistance; (6) acting in a socially appropriate manner; and (7) responding appropriately to changes in the work place. Both also viewed claimant as being moderately limited in his capacity to maintain a normal work week without interruptions due to psychological symptoms, to accept criticism and to get along with co-workers. These same evaluators, on the "B" criteria of the Psychiatric Review Technique (PRT) Form, rated claimant as slightly limited in daily living activities and moderately limited in social functioning; claimant seldom -11- experienced problems with concentration and never had episodes of deterioration at work or in work-like settings. In 1988, two non-examining physicians also completed PRT forms. They opined that although claimant was anxious and depressed, his emotional condition was not severe. See Exhibit 35. As for the "B" criteria, claimant ___ had slight limitations in daily living and social functioning, seldom experienced problems with concentration and never had problems with deterioration at work or in work- like settings. The ALJ also questioned the VE concerning the above evidence. Again, the VE pointed out that the evidence was conflicting and the conclusions as to claimant's work abilities were dependent on what medical reports one utilized. Based on the psychiatrist's report and the RFC evaluation, claimant would not be able to work at all. However, the other reports, according to the VE, did not support such a finding of total disability. Although we do not agree with the ALJ that claimant did not have any emotional impairment and even hesitate to ___ find, as did the Appeals Council, that while such an impairment did exist, it had no significant effect on claimant, we believe that there is substantial evidence to support the conclusion that claimant was not precluded from work. We first note, however, that the findings of moderate -12- limitations in accommodating the demands of a work setting -- i.e., regular attendance and the completion of a work-week ____ without interruption -- can erode the occupational base, at least marginally. See Ortiz v. Secretary of Health and Human ___ _____ _____________________________ Services, 890 F.2d 520, 527 (1st Cir. 1989). Nonetheless, ________ given the presence of the RFC assessments indicating that claimant had the ability to follow simple instructions and that his attention and concentration were only minimally affected, along with the RFC assessments that claimant's emotional impairment was not severe, we cannot say that the VE's conclusion that claimant could work as a warehouse stock person was without record support. Although the record could support a different conclusion, we again emphasize that conflicts in the record are for the Secretary. See Irlanda ___ _______ Ortiz v. Secretary of Health and Human Services, 955 F.2d _____ ________________________________________ 765, 770 (1st Cir. 1991) (per curiam). III. CONCLUSION ___ __________ For the foregoing reasons, the judgment of the district court is affirmed. ________ -13-